UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRUCE FERRELL, | : |
| | : |
| Plaintiff | : |
| | : |
| v. | : CIVIL NO. 3:CV-01-0924 |
| | : |
| JEFFREY A. BEARD, ET AL., | : (Judge Kosik) |
| | : |
| Defendants | : |

**Memorandum and Order**

**Background**

Pursuant to this Memorandum and Order, the Court will address several motions pending in this consolidated civil rights action filed by Bruce Ferrell pursuant to 42 U.S.C. § 1983. The first motion is one for injunctive relief based upon Defendants alleged confiscation of his legal materials. (Doc. 154.) Also pending are two related motions filed by Plaintiff to submit exhibits with regard to his motion (Docs. 164, 167.) The Court will also address what it believes to be Plaintiff's second request for the appointment of counsel in this case. (Doc. 152.) Defendants have filed opposition to both the motion for injunctive relief as well as the motion for counsel.

**Discussion**

    **A.    Motion for Injunctive Relief**

Plaintiff brings this lawsuit wherein he alleges that Defendants Jeffrey Beard, Secretary of the Department of Corrections ("DOC"), Sarah Vanderbrook Meart, a DOC attorney, and several officials at the State Correctional Institution at Camp Hill violated his constitutional rights. Specifically, the gist of the consolidated complaint sets forth allegations of the denial of legal and

religious property, retaliation and illegal housing in the infirmary and Special Management Unit at SCI-Camp Hill.  Plaintiff alleges that Defendants' actions were in retaliation for Plaintiff's smearing of feces and urinating on himself and in his cell.  As a result of the deprivation of legal property, Plaintiff alleges injury - namely the dismissal of cases as well as the delay or prevention of the filing of appeals.  Plaintiff also contends that he was transferred to the State Correctional Institution at Pittsburgh in retaliation for his actions.

On April 18, 2006, Plaintiff filed a motion for court order directing Defendant Beard and his employees to cease confiscating, withholding and destroying his legal property in an effort to deny him access to the courts.  (Doc. 154.)  At the time the motion was filed, Plaintiff was confined at SCI-Fayette.  He has since been transferred to SCI-Mahanoy.  The motion is fully briefed.  Also pending are two motions subsequently filed by Plaintiff to submit exhibits in support of his motion.  (Docs. 164, 167.)  The proposed exhibits are attached to the motions.  These motions will be granted to the extent that Plaintiff's exhibits will be considered in deciding the outcome of the motion for injunctive relief.

Plaintiff basically argues that Defendant Beard has instructed various employees at the State Correctional Institution at Fayette, none of which are defendants in this action, to confiscate and destroy his legal materials in an effort to thwart his ability to litigate this action.  Plaintiff refers to ten (10) boxes of legal materials, without which he is unable to litigate this case.  It is Plaintiff's belief that because the Western District of Pennsylvania court ordered a complaint he filed there served, his materials in this case are being confiscated in retaliation.  In responding to Plaintiff's motion, Defendants argue that Plaintiff's own misconduct caused his legal materials to be separated however he was always permitted access to his materials.  They further contend that Plaintiff has suffered no actual injury.

2

Preliminary injunctive relief is extraordinary in nature and should issue in only limited circumstances. See American Tel. and Tel Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1426-27 (3d Cir. 1994), cert. denied, 514 U.S. 1103 (1995). Moreover, issuance of such relief is at the discretion of the trial judge. Orson, Inc. v. Miramax Film, Corp., 836 F. Supp. 309, 311 (E.D. Pa. 1993). In determining whether to grant a motion seeking preliminary injunctive relief, courts in the Third Circuit consider the following four factors:

(1)   likelihood of success on the merits;

(2)   irreparable harm resulting from a denial of relief;

(3)   the harm to the non-moving party if relief is granted; and

(4)   the public interest.

United States v. Bell, Civ. No. 1:CV-01-2159, 2003 WL 102610, *2 (M.D. Pa. January 10, 2003)(J. Conner)(internal citations omitted). It is the moving party that bears the burden of satisfying these factors. (Id.).

Perhaps the most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted, the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered. See Continental Group, Inc. v. Amoco Chems. Corp., 614 F.2d 351, 356 (3d Cir. 1980). Irreparable injury is "potential harm which cannot be redressed by a legal or equitable remedy following a trial." Instant Air Freight, 882 F.2d at 801. A court may not grant preliminary injunctive relief unless "[t]he preliminary injunction [is] the only way or protecting the plaintiff from harm." Id. The relevant inquiry is whether the party moving for the injunctive relief is in danger of suffering the irreparable harm at the time the preliminary injunctive relief is to be issued. Id.

In the instant case it is evident that preliminary injunctive relief is not warranted. First,

3

Plaintiff is no longer confined at SCI-Fayette, where the alleged confiscation is claimed to be taking place. He has since been transferred to SCI-Mahanoy. Further, the individuals alleged to be depriving Plaintiff of his legal materials are not defendants in this action. While Plaintiff contends they are acting under the direction of Defendant Beard, the Secretary of the DOC, Plaintiff sets forth no facts supporting this allegation. He merely sets forth conclusory allegations of Beard's alleged involvement. More importantly, Plaintiff is unable to demonstrate the likelihood of his success on the merits or irreparable harm in this case. In opposing the motion, Defendants have submitted the declarations of Gary Abrams, inmate counselor at SCI-Fayette, and Harry Wilson, Superintendent at SCI-Fayette. (Doc. 166.) The declarations set forth the prison procedure for inmates confined in the Long Term Segregation Unit ("LTSU") to obtain their legal materials. They are permitted to have one full box in their cells and are permitted to request an exemption to have an additional box. Inmates are also permitted to exchange the legal materials once a month. If circumstances warrant it, a prisoner may also request other accommodations if necessary to pursue their active litigation. (Id., Abrams Declar. at ¶ 8.)

On March 30, 2006, a search of Plaintiff's cell revealed he had four (4) boxes of legal materials. Plaintiff's name did not appear on the list as having either requested or having been granted an exemption. Plaintiff was asked to provide a list of his active court cases to determine if any justification existed for possession this quantity of legal materials in his cell. He refused to cooperate, and did so in profane language. (Id. at ¶ 11.) As a result, all materials other than those that could fit into one box were removed from the cell and taken to a property storage room.

On or about May 12, 2006, Plaintiff and other LTSU inmates attempted suicide. (Doc. 166, Wilson Declar. at ¶ 6.) The procedures that were thereafter followed included the inmates removal from the cell and placement in a psychiatric observation camera cell with nothing but an "anti-

suicide" smock.  Defendant Beard had no involvement in this procedure, which is standard in such cases.  Plaintiff was informed that he could have his property back if he conformed with prison rules.  He did not communicate a willingness to do so, and did not express any concern of filing deadlines which would permit his immediate access to legal materials.  Plaintiff was informed that it was he who determined when he would be returned to his LTSU cell.  The declarations further state that none of Plaintiff's legal property was destroyed.

While Plaintiff submits copies of grievances and his own declaration in response to those submitted by Defendants, they only establish that pursuant to grievances he did request access to his legal property on various occasions.  They do not establish that Plaintiff has suffered any actual injury, such as the dismissal of any case or appeal.  See Lewis v. Casey, 518 U.S. 343, 349 (1995).  Further, it is clear he has not shown irreparable harm.  Plaintiff has not shown injury for which he cannot seek legal remedy.  Further, a review of the docket reveals that Plaintiff has not been prevented from litigating this action.  He has not only filed numerous motions, but also has filed opposition to Defendants' summary judgment motion as well as numerous opposing exhibits.  Accordingly, the motion for injunctive relief will be denied.

### B. Motion for Appointment of Counsel

It is a well-established principle that prisoners have no constitutional or statutory right to appointment of counsel in a civil case.  Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997).  Yet, district courts have broad discretionary power to appoint counsel under 28 U.S.C. § 1915.  Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002), citing Tabron v. Grace, 6 F.3d 147, 153 (3d Cir. 1993); Ray v. Robinson, 640 F.2d 474, 477 (3d Cir. 1981).  The United States Court of Appeals for the Third Circuit has stated that the appointment of counsel for an indigent litigant should be made when circumstances "indicate the likelihood of substantial prejudice to him

5

resulting, for example, from his probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case." Smith-Bey v. Petsock, 741 F.2d 22, 26 (3d Cir. 1984).

The initial determination to be made by the court in evaluating the expenditure of the "precious commodity" of volunteer counsel is whether the plaintiff's case "has some arguable merit in fact and law." Montgomery, 294 F.3d at 499.  In this case, Plaintiff alleges the deprivation of religious and legal materials, retaliation and illegal confinement in the infirmary and SMU. He claims he suffered injury from the denial of his access to the courts in the form of dismissed cases and delay/prevention is pursuing appeals.  However, pending in this case is Defendants' motion seeking the entry of summary judgment.  Further, a weighing of the other pertinent factors militate against appointment of counsel at this time.  Those factors are:

> 1. The plaintiff's ability to present his or her own case;
>
> 2. The difficulty of the particular legal issues;
>
> 3. The degree to which factual investigation will be necessary and the ability of the plaintiff to pursue the investigation;
>
> 4. The plaintiff's capacity to retain counsel on his or her own behalf;
>
> 5. The extent to which a case is likely to turn on credibility determinations; and,
>
> 6. Whether the case will require testimony from expert witnesses.

Montgomery, 294 F.3d at 499, citing Tabron, 6 F.3d at 155-57.

In ruling on the first request for counsel, the Court found Plaintiff able to present his own case and the legal issues not to be complicated.  Plaintiff requests the Court to now revisit the issue claiming that Defendant Beard is interfering with his access to his legal materials thereby curbing his ability to litigate this action.  This motion for counsel was filed the day before the motion for injunctive relief discussed above.  In the motion for counsel Plaintiff also appears to admit that at the

6

time he filed the motion he was being given the opportunity to access some of his materials.  (Doc. 152 at ¶ 4.)  Based upon the Court's discussion above of this issue, this argument will not serve as a basis for the appointment of counsel in this case.  Further, Plaintiff attaches as an exhibit to his motion for counsel a letter from Defendant Beard to Senator Rick Santorum detailing the Department of Corrections handling of Plaintiff's legal property, and the DOC's efforts to forward legal materials to Plaintiff following his transfers to various prisons.  Thus, it appears that the sole basis for requesting counsel, to help Plaintiff obtain his legal property, is not only being addressed by the DOC, but also pursued efficiently by Plaintiff through the filing of motions with this Court.

      The docket in this action speaks volumes in terms of Plaintiff's ability to litigate this action without counsel.  There is little doubt that Plaintiff has and continues to demonstrate the ability to successfully litigate this case on his own, including his ability to prepare and file motions in this case which are understandable, pursue discovery and oppose motions filed by Defendants.  The case has been ongoing for several years and is approaching consideration of the pending summary judgment motion.  Plaintiff has filed opposition to the motion along with voluminous exhibits.   While there are a few discovery issues which first need to be addressed, Plaintiff has prepared his discovery motions presenting his arguments to the Court demonstrating his ability to pursue this case on his own. Any concern on Plaintiff's part about the need for counsel in the future to assist in trial preparation is premature in light of the pending motion for summary judgment.  Accordingly, the request for appointment of counsel at this time will be denied, but without prejudice.  Should future proceedings demonstrate the need for counsel, the matter can be reconsidered, either <u>sua sponte</u> or upon a motion properly filed.

7

**ACCORDINGLY, THIS 6th DAY OF SEPTEMBER, 2006,** in accordance with the foregoing, **IT IS HEREBY ORDERED THAT:**

1. Plaintiff's motions to submit exhibits in support of his motion for injunctive relief (Docs. 164, 167) are **granted** to the extent that the exhibits submitted have been considered by the Court.

2. Plaintiff's motion for injunctive relief (Doc. 154) is **denied.**

3. Plaintiff's motion for the appointment of counsel (Doc. 152) is **denied without prejudice**.

s/Edwin M. Kosik<br>
United States District Judge